BLANCHE, Judge.
Plaintiff-appellant, Felix Canova, Sr., appeals the denial of his request for a permanent injunction prohibiting the defendants-appellees, Frederick St. Germain and his wife, Lena St. Germain, from operating a beauty salon on certain property in the subdivision known as “Pizzolato Subdivision,” Ascension Parish. We affirm.
Plaintiff and defendants purchased adjacent lots from Carlo Pizzolato, who owned certain batture acreage which he developed into Pizzolato Subdivision. They became interested in purchasing the lots for the purpose of home construction prior to rec-ordation of the usual subdivision building restrictions. At that time, the parties were aware that restrictions were to be recorded before any property was sold and would limit all lots to residential use.
As a condition of their lot purchase, the defendants sought and obtained Pizzolato’s permission for Lena St. Germain to operate a beauty salon at their home. Since such operation would be prohibited by the contemplated subdivision restrictions, Piz-zolato promised the defendants that the recorded restrictions would contain an exception allowing the operation of the salon. Subsequent to this agreement and prior to defendants’ purchase of their lot, the subdivision restrictions were recorded. However, they did not contain the exception promised by Pizzolato.
Paragraph (1) of said restrictions reads as follows:
“(1) All of the lots contained in this subdivision are hereby designated as residential lots, and no building shall be erected, altered, placed or permitted to remain on any residential lot other than
one (1) detached single family dwelling,
not to exceed two (2) stories in height and a private garage or carport for not more than three (3) cars.” (Record, p. 8)
During the negotiations surrounding the purchase of plaintiff’s lot, Pizzolato informed plaintiff that he had granted defendants permission to operate a beauty salon at their home. In fact, the testimony of Pizzolato, who was the only disinterested witness to testify, established that plaintiff orally agreed to allow defendants to operate the salon in spite of the proposed residential limitations, that plaintiff made this oral agreement at a meeting in Pizzo- *510 lato’s home on a Sunday morning before either of the parties had purchased a lot, and that said agreement was entered into in the presence of Pizzolato, his wife and sister-in-law; defendant, Frederick St. Germain; and plaintiff’s wife. It was stipulated at trial that Pizzolato’s wife and sister-in-law would corroborate his version of the Sunday meeting.
It appears that all parties present at the meeting thought that it would be a good idea to have a beautician in the immediate neighborhood. In fact, Lena St. Germain had styled the hair of plaintiff’s wife on prior occasions.
Although plaintiff acknowledges that the subject of the beauty salon was discussed, he denies giving his consent at the meeting. The only evidence to support plaintiff’s contention is his own uncorroborated testimony. His wife, who was present at the meeting, was not called to testify in his behalf.
Pizzolato explained that he did not bother to have the exception for the beauty salon placed in the restrictions because he informed all of the prospective lot purchasers, including plaintiff, of the fact that he had granted permission to the defendants to violate this all-inclusive rule. Furthermore, he stated that he thought a written exception “wasn’t needed because we was all a bunch of friends living together.” (Record, p. Ill)
In view of the foregoing, the evidence preponderates to the effect that plaintiff, in the presence of defendant, Frederick St. Germain, agreed to allow defendants to operate the subject beauty salon in their home.
Subsequent to the aforementioned meeting, the subdivision restrictions were recorded, and both plaintiff and defendants purchased lots in the subdivision.
Plaintiff built his home first. Defendants built their home later, including therein an inconspicuous 9-by-12 foot area designed as a beauty salon and furnished with appropriate equipment worth approximately $1,000.
The record discloses that the plaintiff lived adjacent to defendants’ lot, and during the construction of defendants’ home, he was aware that the beauty salon was actually being included therein. However, despite this knowledge, plaintiff did not seek to enjoin the construction of the salon area.
The defendants moved into their new home on December 23, 1970, but due to the pregnancy of Lena St. Germain and her subsequent child care responsibilities, the beauty salon was not operated until March, 1972. At that time Lena St. Germain was granted a Lousiana State Board of Cosmetology license to operate “Lena’s Beauty Salon.” Said salon was operated two days a week at the time of trial.
For the purposes of the following discussion, we will consider the beauty salon to be a commercial enterprise and, therefore, prohibited by the aforementioned subdivision restrictions.
Shortly after the issuance of the license and commencement of operation, plaintiff sought the instant injunction to prohibit the defendants from operating a business in the subdivision in direct contravention of the recorded restrictions. The plaintiff’s request was denied by the trial judge without recorded reasons therefor.
The validity of the restrictions is not contested in this suit. The only issue herein is whether or not this particular plaintiff has a right against the defendants to enforce the residential limitations provision of the instant building restrictions.
In view of the evidence in this case, we think that the plaintiff is equitably estopped from enforcing his rights under the restrictions.
*511 In Wilkinson v. Wilkinson, 323 So.2d 120 (1975), the Louisiana Supreme Court stated:
“Equitable estoppel, or ‘estoppel in pais,’ can be defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. Thus, there are three elements of estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one’s detriment because of the reliance. State ex rel. Porterie v. Gulf, Mobile and Northern R. Co., 191 La. 163, 184 So. 711 (1938); American Bank and Trust Co. v. Trinity Universal Insurance Co., 194 So.2d 164 (La.App. 1st Cir. 1966), affirmed, 251 La. 445, 205 So.2d 35 (1967); Babin v. Montegut Insurance Agency, Inc., 271 So.2d 642 (La.App. 1st Cir. 1972).” (323 So.2d at 126)
In the case at bar, all three elements of the doctrine are present.
(1) The evidence establishes that prior to the time when defendants purchased their lot, the plaintiff, in the presence of defendant, Frederick St. Germain, consented to the erection and operation of the beauty parlor. During the construction phase, plaintiff stood by silently and allowed the defendants to construct the salon within their new home. Yet, at all times he was aware of their intention to operate the salon as a business. It is, therefore, clear that by his words and actions the plaintiff led the defendants to believe that he, individually, would not enforce the residential limitation of the instant restrictions against them.
(2) The defendants were justified in believing that plaintiff would not object to the operation of the beauty salon, in view of their having been told by plaintiff that he consented to the operation and further enforced by plaintiff’s silent acquiescence in the construction of the physical structure.
(3)The defendants, in reliance upon plaintiff’s consent (in addition to the assurance of the subdivider), expended money and effort to purchase the lot and construct the instant home and beauty salon. Thus, the defendants detrimentally changed their position in reliance upon the conduct of the plaintiff.
In view of the foregoing, we hold that even though it appears that the operation of the instant beauty salon is in direct violation of the aforementioned subdivision restrictions, this particular plaintiff, due to his words and actions, is equitably estopped from enforcing his right to have said operation enjoined.
We are aware, as was stated in Wilkinson, supra, that estoppels are not favored in our law. However, all of the elements necessary to sustain the plea are present in the instant case, and in view of the facts before us, equity demands that the doctrine be applied herein.
Although building restrictions such as those at issue herein are sui generis real rights, they are of necessity asserted by the owner of the property which they favor. In the instant case, the plaintiff led the defendants to believe that he would not assert the right which favored his property. Nevertheless, after the defendants relied upon the words and actions of the plaintiff and built the subject beauty salon, plaintiff now seeks to enforce the restrictive covenants against them. We believe that the plaintiff is equitably estopped from asserting the aforementioned right in the instant case.
In so holding, we do not infer that the oral agreement between these parties had the effect of changing or amending the subject recorded building restrictions. We are basing our affirmance of the district court judgment solely on the ground of eq *512 uitable estoppel as said doctrine applies to the circumstances and parties in this suit.
For the above and foregoing reasons, the judgment of the trial court is affirmed, at appellant’s costs.
AFFIRMED.